UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DWAYNE E. BROOKS,

                                Petitioner,

        -against-

WILLIAM A. LEE,

                                Respondent.

------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

12 Civ. 2023 (KMK)(JCM)

To the Honorable Kenneth M. Karas, United States District Judge:

Petitioner Dwayne Brooks ("Petitioner"), proceeding *pro se*, filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 dated February 15, 2013.[1] (Docket No. 12). Respondent William A. Lee ("Respondent") opposed the amended petition by affirmation and memorandum of law dated June 3, 2013. (Docket No. 17). Petitioner submitted a reply on August 19, 2013. (Docket No. 20). For the reasons set forth below, I respectfully recommend that Petitioner's writ of habeas corpus be denied.

## I. BACKGROUND

### A. The Crime and Indictment

Petitioner's convictions arise from an incident in which he fatally stabbed his friend, Michael Bristow. Construing the evidence in the light most favorable to the State, *see, e.g.*, *Murden v. Artuz*, 497 F.3d 178, 184 (2d Cir. 2007), the following facts were established at trial.

---

[1] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the *Houston* "prison mailbox rule"). Petitioner certified that he delivered his original petition to prison authorities for mailing on March 8, 2012, (Docket No. 1 at 11), and his amended petition on February 15, 2013, (Docket No. 12 at 11). Unless otherwise noted, the Court adopts Petitioner's dates for this filing and for all other filings discussed herein.

In March 2007, Petitioner was living with his girlfriend, Linnea Perkins ("Ms. Perkins"),

in her apartment in Warwick, New York.  (Tr. L. Perkins[2] at 61-62).  Ms. Perkins, who was

seven-months pregnant with Petitioner's child, also shared a seven-year-old child with Michael

Bristow ("Mr. Bristow"), Petitioner's long-time friend. (*Id.* at 61-65; Tr. Isiah Bristow[3] at 51,

68).  Shortly after 7:00 a.m. on March 20, 2007, Mr. Bristow checked out of his shift as an

overnight stocker, a position that necessitated the use of a box cutter, at Wal-Mart in

Middletown, New York. (Tr. Newton[4] at 74-76).  At approximately 8:00 p.m. that evening,

Petitioner and Mr. Bristow, who were both in the kitchen of Ms. Perkins' apartment, began

arguing. (Tr. Isiah Bristow at 71-74).  Ms. Perkins was also in the kitchen, and her children Billy

and Isiah, Mr. Bristow's son, were in the apartment as well. (Tr. L. Perkins at 65-67).  As the

argument escalated, Petitioner grabbed a knife from a butcher block on the kitchen table and

stabbed Mr. Bristow in the chest. (Tr. Isiah Bristow at 71-74).

Mr. Bristow, wounded and bleeding, walked into the living room where he spilled blood

on both Billy and Isiah. (*Id.* at 74-75).  Mr. Bristow then exited the apartment and staggered

along McEwen Street in Warwick until he collapsed near Freddy's Bar. (*Id.* at 75; Tr. Trezza[5] at

80-81).  Laura Trezza ("Ms. Trezza"), certified in CPR, was returning from an errand and

observed Mr. Bristow stumble along and then collapse onto the street. (Tr. Trezza at 79-81).  Ms.

Trezza called 911 and began administering CPR. (*Id.* at 81, 85).  At approximately 8:14 p.m.,

Officer Frederick Hoffman of the Town of Warwick Police Department ("Officer Hoffman")

---

[2] Refers to the transcript of Linnea Perkins' trial testimony. (Docket No. 17-13).  All page number citations herein refer to the page number assigned upon electronic filing.

[3] Refers to the transcript of Isiah Bristow's trial testimony. (Docket No. 17-10).

[4] Refers to the transcript of Steve Newton's trial testimony. (Docket No. 17-9).

[5] Refers to the transcript of Laura Trezza's trial testimony. (Docket No. 17-9).

arrived at the scene and assisted Ms. Trezza in administering CPR until an ambulance and emergency medical technicians arrived. (*Id.* at 85-86; Tr. Hoffman[6] at 90-91). Ms. Perkins, along with her two sons, also arrived at the scene and witnessed Mr. Bristow lying on the ground. (Tr. Hoffman at 88-90). Officer Hoffman saw blood on Mr. Bristow's shirt and lifted it up to observe a stab wound in Mr. Bristow's chest. (*Id.* at 91). Mr. Bristow was then rushed to Saint Anthony's Hospital in Warwick where he was pronounced dead. (Tr. Brasier[7] at 112).

After the incident, Petitioner went to the home of Colleen Stewart ("Ms. Stewart") in Warwick and informed her that he had "done something crazy." (Tr. Stewart[8] at 21). Petitioner did not mention who he stabbed, whether Petitioner himself sustained any injuries, or whether Mr. Bristow brandished a box cutter at any time during the incident. (*Id.* at 21-23). Petitioner then left Ms. Stewart's home, not telling her where he was going, (*id.* at 23), and went to the apartment of Michael Malik ("Mr. Malik"). At Petitioner's request, Mr. Malik drove Petitioner to Newburgh, New York. (Tr. Malik[9] at 38-39). During the car ride, Mr. Malik overheard part of Petitioner's phone conversation in which Petitioner stated that somebody, who was his girlfriend's ex-boyfriend, had "aggravated him" and "got into his face, and wouldn't back up." (*Id.* at 39-42). Mr. Malik, through the course of the car ride, did not observe any injuries on Petitioner and did not hear any information regarding Mr. Bristow having possessed a box cutter. (*Id.* at 47).

After Petitioner fled, Investigator Paul Langowsky of the Town of Warwick Police Department ("Investigator Langowsky") processed the crime scene, both inside and outside Ms.

---

[6] Refers to the transcript of Officer Frederick Hoffman's trial testimony. (Docket No. 17-9).

[7] Refers to the transcript of Officer Jason Brasier's trial testimony. (Docket No. 17-11).

[8] Refers to the transcript of Colleen Stewart's trial testimony. (Docket No. 17-10).

[9] Refers to the transcript of Michael Malik's trial testimony. (Docket No. 17-10).

Perkins' apartment. (Tr. Langowsky[10] at 34, 39).   Outside, Investigator Langowsky observed

blood on the railing of the stairs that led to the apartment and on the walkway that led to the

stairs. (*Id.* at 34-42).   Investigator Langowsky used swabs to obtain samples of the blood

observed in both outside locations. (*Id.*).   Inside the apartment, Investigator Langowsky first

entered the living room and observed a blood stain on the couch in the shape of a knife blade and

another on the carpet that was covered in plastic. (*Id.* at 44-45, 49-51).   Next, in the kitchen,

Investigator Langowsky observed a small table with a wooden butcher block and a set of knives,

a broken plastic knife handle under the kitchen table, and a bloody knife blade near the top of the

garbage can. (*Id.* at 48, 52-59).

Thereafter, Investigator Langowsky entered the children's bedroom and observed a blood

stain, as well as a powdered cleaning agent, on the carpet. (*Id.* at 60-62).   He also observed a

blood stain on a pair of children's socks in a pile of laundry outside the master bedroom, and a

container of cleaning agent under the kitchen sink. (*Id.* at 63-64).   Investigator Langowsky then

photographed his observations, collected the knife blade, the broken knife handle, cuttings from

the couch and carpet, and the pair of blood-stained socks. (*Id.* at 38-43, 89-93).

Officer Jason Brasier of the Warwick Police Department ("Officer Brasier"), who had

been at the crime scene earlier that evening, went to Saint Anthony's Hospital to obtain Mr.

Bristow's personal belongings and clothing. (Tr. Brasier at 112-113).   Officer Brasier observed

Mr. Bristow's cellphone, a fully closed blue box cutter that was removed from Mr. Bristow's

pants, and a second box cutter in Mr. Bristow's jacket pocket that was approximately one-quarter

open. (*Id.* at 113-115).   Officer Brasier secured all of Mr. Bristow's belongings and turned them

over to Sergeant Morley. (*Id.* at 115).   Subsequently, Investigator Langowsky submitted these

---

[10] Refers to the transcript of Investigator Paul Langowsky's trial testimony. (Docket No. 17-11).

and other items of evidence to the New York State Police Laboratory in Albany, New York for further analysis. (Tr. Langowsky at 105-106).

At approximately 12:45 a.m. the next morning on March 21, 2009, Angelica Perkins, Ms. Perkins' sister, received a telephone call from Petitioner. (Tr. A. Perkins[11] at 30). Petitioner informed Angelica Perkins that he "turned himself in" and wanted Ms. Perkins to know that "he was all right [and that] [h]e wasn't running." (*Id.* at 31). Angelica Perkins asked Petitioner if he knew that Mr. Bristow was dead, to which Petitioner replied "yes" and that "everything happens for a reason." (*Id.*). During the call, Petitioner did not mention anything about having sustained injuries, Mr. Bristow having had any type or weapon, or whether Mr. Bristow had attacked him. (*Id.* at 33).

Petitioner turned himself in to the City of Newburgh Police Department at approximately 1:00 a.m.. (Tr. Vasquez[12] at 3). Later, at around 1:57 a.m., Petitioner was taken to an interview room where he was read his *Miranda* rights, informed the investigators that he understood his rights, and provided the investigators with a statement, which Petitioner then reviewed and signed. (*Id.* at 11-19).

Also on March 21, 2009, Dr. Kunjlaea Ashar of the Westchester County Medical Examiner's Office ("Dr. Ashar") conducted an autopsy on the body of Mr. Bristow. (Tr. Ashar[13] at 6). Dr. Ashar's external examination revealed a stab wound to Mr. Bristow's chest as well as an incised wound on Mr. Bristow's right index finger. (*Id.* at 7). The internal examination revealed the presence of blood in Mr. Bristow's heart and abdominal cavity. (*Id.* at 8). Dr. Ashar also traced the stab wound and determined that it passed through the sternum, penetrated the

---

[11] Refers to the transcript of Angelica Perkins' trial testimony. (Docket No. 17-10).

[12] Refers to the transcript of Investigator Michael Patrick Vasquez's trial testimony. (Docket No. 17-11).

[13] Refers to the transcript of Dr. Kunjlaea Ashar's trial testimony. (Docket No. 17-10).

heart, and ended in the liver. (*Id.*).  Based on this examination, Dr. Ashar concluded that Mr. Bristow died as a result of a stab wound to his chest that penetrated his heart and liver, and that the manner of death was homicide. (*Id.* at 11).  Dr. Ashar indicated that the wound was consistent with the knife blade that was recovered from the kitchen garbage can in Ms. Perkins' apartment. (*Id.* at 11-14).

Subsequently, DNA analyses were performed on the items and blood samples collected at the crime scene.  The DNA analyses confirmed that the blood stains found on and around the stairs leading to Ms. Perkins' apartment and the blood stains found inside the apartment on the carpet and couch were a match to Mr. Bristow. (Tr. Day[14] at 17-24; Tr. Gage[15] at 41-48; Docket No. 17-2 at 105-120).  Additionally, the blood on the knife blade recovered from the scene matched that of Mr. Bristow. (Tr. Day at 17-24; Tr. Gage at 41-48; Docket No. 17-2 at 105-120).  Further, based on an examination by Gary Veeder of the New York State Police Forensic Investigation Center ("Mr. Veeder"), the results of which were confirmed by a subsequent independent analysis,[16] the broken knife blade and the plastic handle belonged to the same unit. (Tr. Veeder[17] at 5-13; Docket No. 17-2 at 120-124).

By Orange County Indictment Number 2007-265, Petitioner was charged with the crimes of murder in the second degree, manslaughter in the first degree and criminal possession

---

[14] Refers to the transcript of Dr. Allyson Day's trial testimony. (Docket No. 17-12).

[15] Refers to the transcript of Mallory Gage's trial testimony. (Docket No. 17-12).

[16] In 2008, Mr. Veeder committed suicide after it was revealed that the State Police were conducting an audit of his work as a result of his failure to comply with certain testing protocols. (Docket No. 17 at ¶ 5).  Petitioner's case was identified as one in which Mr. Veeder participated. (*Id.*).  Specifically, Mr. Veeder examined the knife blade and handle collected at Ms. Perkins' apartment and testified that they were part of the same unit. (Tr. Veeder at 5-13).  As part of the investigation of Mr. Veeder, the State Police engaged the services of an outside laboratory to review Mr. Veeder's findings. (Docket No. 17 at ¶ 5).  The independent analysis of the knife blade and handle collected at the crime scene confirmed the accuracy of Mr. Veeder's tests and findings. (Docket No. 17 at ¶ 5; Docket No. 17-2 at 122-124).

[17] Refers to the transcript of Gary Veeder's trial testimony. (Docket No. 17-12).

of a weapon in the third degree. (Docket No. 17-2 at 2-3).  On March 26, 2007, he was arraigned

on the indictment and served with voluntary discovery. (Docket No. 17 at ¶ 3).

**B.  Trial and Verdict**

The court held jury selection on October 22, 2007, (Docket Nos. 17-7 to 17-8), and a trial

from October 23 through October 31, 2007, (Docket Nos. 17-9 to 17-15).

On October 31, 2007 the jury returned a verdict, convicting Petitioner of manslaughter in

the first degree and criminal possession of a weapon in the third degree, while acquitting him of

the murder charge. (Docket No. 17-15 at 105-109).

**C.  Pre-Sentencing C.P.L. § 330.30 Motion**

Petitioner filed a motion pursuant to C.P.L. § 330.30(1), dated November 30, 2007, to set

aside the jury's guilty verdict and dismiss the charges against him. (Docket No. 17-2 at 8-19).

Petitioner argued that because the jury found him not guilty of murder in the second degree, and

the only defense he asserted was that of justification, the jury must have found Petitioner's

actions justified and should have therefore acquitted him of all lower charges. (*Id.*).  By Decision

and Order dated January 23, 2008, the Orange County Court denied Petitioner's motion, stating

that Petitioner's arguments were not preserved for appeal because trial counsel never asserted

this objection at the time of the charge conference or after the jury charge. (Docket No. 17-2 at

24-26).

**D.  Sentencing**

At a January 23, 2008 sentencing hearing before Judge Nicholas DeRosa of the Orange

County Court, Petitioner, a second felony offender,[18] was given concurrent sentences of: (a)

twenty-five years plus five years post release on the count of manslaughter in the first degree;

---

[18] Petitioner confirmed at his sentencing hearing that he was previously convicted of burglary in the first degree on January 8, 2001. (Docket No. 17-16 at 2-3).  Accordingly, he was deemed a second felony offender for purposes of sentencing.

and (b) three-and-a-half to seven years on the count of criminal possession of a weapon in the

first degree. (Docket No. 17-16 at 14-15).

### E.  Post-Trial C.P.L. § 440.10 Motion

Pursuant to C.P.L. § 440.10 ("§ 440.10"), Petitioner filed a post-judgment motion dated

November 22, 2008 arguing that he was denied effective assistance of counsel because counsel

had failed to object to the Court's justification charge, had failed to object to the jury's verdict on

the basis of the acquittal of the murder charge, and had failed to seek independent DNA testing

of a box cutter. (Docket No. 17-2 at 29-85).  Petitioner also contended that the County Law

§ 18-b Assigned Counsel Program (the "Assigned Counsel Program") was unconstitutional, that

§ 440.10 and C.P.L. § 440.30 ("§ 440.30") were unconstitutional, and that the state standard

governing ineffective assistance of counsel was unconstitutional. (*Id.*).  Petitioner also moved for

additional DNA testing of the box cutter based on the involvement of Mr. Veeder. (*Id.*).

By Decision and Order dated May 11, 2009, the court denied Petitioner's claims. (Docket

No. 17-3 at 3-5).  It held that the ineffective assistance of counsel claim could be heard on direct

appeal and, as such, was not ripe for collateral review. (*Id.*).  Similarly, the court found that

Petitioner's claim relating to the Assigned Counsel Program was procedurally barred as a matter

that could have been placed on the record. (*Id.*).  The court also found that the Assigned Counsel

Program Claim, along with Petitioner's allegations regarding the unconstitutionality of the state

standard governing ineffective assistance of counsel, was deficient because Petitioner did not

serve notice of the constitutional challenge to the New York State Attorney General's Office.

(*Id.*).  Finally, the court found that Petitioner's constitutional challenges to § 440.10 and § 440.30

were without merit. (*Id.*).  Petitioner sought leave to appeal this decision, (Docket No. 17-3 at 7),

which was denied on July 30, 2009, (Docket No. 17-4 at 2-3).

## F. Direct Appeal

In addition to his post-judgment motion, Petitioner filed a direct appeal. (Docket No. 17-4 at 5-31). Petitioner, in his brief, claimed that the trial court's justification charge was erroneous, that he was denied effective assistance of counsel and that his sentence was excessive. (Docket No. 17-4 at 5-31). Petitioner also sought, and was granted, permission to file a *pro se* supplemental brief. (Docket No. 17-3 at 83-84). However, on Petitioner's own motion dated December 8, 2009, the New York State Appellate Division, Second Department (the "Second Department") rescinded and vacated its prior order granting Petitioner permission to file a *pro se* supplemental brief. (Docket No. 17-4 at 79).

On March 23, 2010, the Second Department affirmed Petitioner's judgments. (Docket No. 17-4 at 81-83). As part of its decision, the Second Department expressly found that Petitioner's contention regarding the trial court's justification charge was unpreserved. (*Id.*). It also found that Petitioner received meaningful representation. (*Id.*).

Petitioner later sought leave to appeal to the New York State Court of Appeals (the "Court of Appeals"), (Docket No. 17-4 at 85-91), which was denied on March 15, 2011, (Docket No. 17-5 at 2-3).

## G. Federal Habeas Corpus Proceedings

Petitioner timely filed a petition for writ of habeas corpus on March 8, 2012. (Docket No. 2). By Order dated December 17, 2012, Judge Loretta A. Preska granted Petitioner the opportunity to amend his petition. (Docket No. 11). Petitioner timely filed an amended petition (the "Petition") on February 22, 2013. (Docket No. 12). Respondent filed an opposition (the "Opposition") to the Petition by papers dated June 3, 2013. (Docket No. 17). Petitioner then submitted a reply on August 19, 2013. (Docket No. 20).

## II. APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "Before a federal district court may review the merits of a state court criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160 (ER)(PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).[19] The procedural and substantive standards are summarized below.

### A. Timeliness Requirement

Federal habeas corpus petitions are subject to AEDPA's strict, one-year statute of limitations. 28 U.S.C. § 2244(d)(1). The statute allows for four different potential starting points to determine the limitations period and states that the latest of these shall apply. As the statute explains:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized

---

[19] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and other cases, *infra*, that are unpublished or only available by electronic database, accompany this Report and Recommendation and shall be simultaneously delivered to *pro se* Petitioner.

by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). However, this one-year period will be tolled during the pendency of a properly filed application for post-conviction relief. 28 U.S.C. § 2244(d)(2). This period may also be subject to equitable tolling, but "only in the rare and exceptional circumstance." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (quotation marks and citation omitted); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (setting forth a two-step analysis for equitable tolling).

## B. Exhaustion as a Procedural Bar

A habeas petition may not be granted unless the petitioner has exhausted his claims in state court. *See* 28 U.S.C. § 2254(b). As the statute prescribes:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

. . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (citation omitted).  If a petitioner "cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court." *Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001); *see also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts).  However, a petitioner may fairly present his claim even without citing to the U.S. Constitution.  As the Second Circuit has stated:

> the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982).  Fair presentation includes petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999) ("a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement").

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (citation omitted).  In such cases, although the claim is technically unexhausted, the district court may deem the claim to be exhausted but procedurally barred from habeas review. *See id.* at 140 ("a claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to

which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only "one direct appeal." *Lowman v. New York*, No. 09 Civ. 0058T, 2011 WL 90996, at *9 (W.D.N.Y. Jan. 11, 2011) (citing N.Y. Ct. R. § 500.20[20]); *see also Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals."). Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court. *See, e.g., O'Kane v. Kirkpatrick*, No. 09 Civ. 05167 (HB)(THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *report and recommendation adopted*, No. 09 Civ. 05167 (HB)(THK), 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); *Lowman*, 2011 WL 90996, at *9 ("Collateral review of this claim—by way of another CPL § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not.") (citing N.Y. C.P.L. § 440.10(2)(c)[21]). In the context of claims for ineffective assistance of counsel, "[c]laims are record-based when a reviewing court could conclude that defendant's counsel was ineffective

---

[20] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. R. 500.20(a) (emphasis added).

[21] N.Y. C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

simply by reviewing the trial record without the benefit of additional background facts that would need to be developed through a post-conviction motion pursuant to CPL 440.10." *Rodriguez v. Smith*, No. 10 Civ. 8306 (KMK)(LMS), 2015 WL 6509153, at *14 (S.D.N.Y. Oct. 28, 2015) (citation omitted).

To avoid the procedural default of an unexhausted claim, a petitioner may show "cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, *i.e.*, the petitioner is actually innocent." *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003) (citations omitted).

## C. Adequate and Independent State Grounds as a Procedural Bar

As the Second Circuit has instructed, federal courts "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Kozlowski v. Hulihan*, 511 F. App'x 21, 23 (2d Cir. 2013) (summary order) (citations omitted). This preclusion applies even if the state court alternatively rules on the merits of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

A state ground is "independent" if it "'fairly appears' to rest primarily on state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). In the normal case, a ground is "adequate only if it is based on a rule that is firmly established and regularly followed by the state in question." *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) (citation omitted). A decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d

at 77 (citation omitted).  However, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Id.* at 240 (citation omitted).  In determining whether a case is "exceptional" in that the state ground should be held inadequate, the Second Circuit uses the following factors as "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (quotation marks and citation omitted).

To avoid a procedural default based on independent and adequate state grounds, a petitioner may "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (citations omitted).

**D.  AEDPA Standard of Review**

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015) (quoting *Richter*, 562 U.S. at 98).  An application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning

that a state court "(1) dispose[d] of the claim 'on the merits,' and (2) reduce[d] its disposition to

judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). Courts examine the "last

reasoned decision" by the state courts in determining whether a federal claim was adjudicated on

the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (noting the presumption that "[w]here

there has been one reasoned state judgment rejecting a federal claim, later unexplained orders

upholding that judgment or rejecting the same claim rest upon the same ground."). "[W]hen a

state court issues an order that summarily rejects without discussion *all* the claims raised by a

defendant, including a federal claim that the defendant subsequently presses in a federal habeas

proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was

adjudicated on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013) (citing *Richter*,

562 U.S. at 86) (emphasis in original). The same presumption applies when "a state court rules

against the defendant and issues an opinion that addresses some issues but does not expressly

address the federal claim in question." *Id.* This "presumption is a strong one that may be

rebutted only in unusual circumstances." *Id.* at 1096.

If a state court adjudicates a federal claim on the merits, the Court must apply AEDPA

deference to that state court ruling.[22] 28 U.S.C. § 2254(d)(1)-(2). In the context of AEDPA

deference, the phrase "clearly established Federal law" means "the holdings, as opposed to the

dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state-

---

[22] If, by contrast, a state court does not adjudicate a federal claim on the merits, "AEDPA deference is not required. . . [and] conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *DeBerry v. Portuondo*, 403 F.3d 57, 66-67 (2d Cir. 2005) (citations omitted).

court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). "A state court decision is contrary to such clearly established federal law if it applies a rule that contradicts the governing law set forth in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (quotation marks and citations omitted).

A state court decision involves an "unreasonable application" of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous -- it must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). In other words, a state court's decision "that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). If a state court decision does not contain reasons for the dismissal of a defendant's federal claim, the Court must consider "'what arguments or theories . . . could have supported[] the state court's decision,' and may grant habeas only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the

holding in a prior decision of the Supreme Court." *Lynch v. Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (citation omitted).

## III. DISCUSSION

Construing the Petition broadly, *see Williams v. Kullman*, 722 F.2d 1048, 1051 (2d Cir. 1983) ("pleading requirements in habeas proceedings should not be overly technical and stringent"), the Court finds that Petitioner asserts the following four grounds for relief. First, Petitioner attacks the trial court's justification charge and, relatedly, argues that he was denied effective assistance of counsel when assigned counsel failed to challenge the allegedly improper charge. (Petition[23] at 4). Second, Petitioner challenges the constitutionality of § 440.10, § 440.30, and the Assigned Counsel Program. (*Id.* at 4-5). Third, Petitioner argues that the DNA testing was inadequate and demands an independent, post-trial DNA test of the box cutter. (*Id.* at 5). Finally, Petitioner challenges his sentence. (*Id.* at 3).

Respondent argues that the Petition should be denied for several reasons. First, Respondent states that Petitioner's jury instruction claim is both without merit and not subject to the review of this Court, as it rests on independent and adequate state law grounds. (Opp.[24] at 23-32). Second, Respondent argues that Petitioner's constitutional challenges to § 440.10, § 440.30, and the Assigned Counsel Program should be denied because they do not raise proper federal claims and also fail on the merits. (*Id.* at 33-39, 47-50). Similarly, Respondent asserts that Petitioner's claimed right of access to post-trial DNA testing does not present a federal constitutional question. (*Id.* at 40-46). Finally, Respondent argues that Petitioner's challenge to his sentence does not present a federal question ripe for this Court's review. (*Id.* at 51-52).

---

[23] Refers to Petitioner's Amended Petition for Writ of Habeas Corpus. (Docket No. 12).

[24] Refers to Respondent's Memorandum of Law in Opposition to the Petition. (Docket No. 17-1).

For the reasons that follow, I respectfully recommend that the Petition be denied in its entirety.

## A. Petitioner's Challenge to the Justification Charge

## 1. Petitioner's Challenge to the Trial Court's Instruction

Petitioner first argues that the trial court failed to instruct the jury properly with respect to justification, or self-defense. (Petition at 4). Petitioner contends that the trial court failed to comply with state court precedent requiring an explicit instruction that, once jurors find a defendant not guilty of one count of murder or manslaughter based upon a theory of justification, they must not consider the remaining charges. (*Id.*).

This claim was denied on direct appeal by the Second Department and the Court of Appeals because it was held to be unpreserved for appellate review pursuant to C.P.L. § 470.05(2). (Docket Nos. 17-4 at 82-83, 17-5 at 3). Upon a review of the record, this Court agrees that Petitioner never voiced the argument now being made at the trial level. Thus, this claim is procedurally barred from federal habeas review because it was denied on independent and adequate state grounds. *See, e.g., Gutierrez v. Smith*, 702 F.3d 103, 110-11 (2d Cir. 2012) (failing to comply with New York's contemporaneous objection rule, and thus failing to preserve claim for appeal, generally bars federal habeas review); *Brown v. Fisher*, No. 13 Civ. 2071 (NSR)(PED), 2015 WL 3619628, at *10-11 (S.D.N.Y. June 9, 2015) (adopting report and recommendation, including regarding New York's contemporaneous objection rule and habeas petitioner's procedural bar). Accordingly, unless Petitioner demonstrates "cause" and "prejudice" or "actual innocence," the Court must deny this claim.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 112 S.Ct. 475, 480 (1991). A jury instruction in a

state trial is normally a matter of state law and challenges to a jury charge are therefore not typically subject to federal habeas review. *See Morales v. Keane*, No. 92 Civ. 8189 (LBS), 1994 WL 38668, at *3 (S.D.N.Y. Feb. 4, 1994). Accordingly, in asserting his claim that the trial court's instructions on justification were improper, Petitioner "faces a substantial burden." *DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). "[T]o obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Blazic v. Henderson*, 900 F.2d 534, 540 (2d Cir. 1990) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985)); *accord Cupp v. Naughten*, 414 U.S. 141, 146 (1973) ("Before a federal court may overturn a conviction resulting from a state trial in which [the disputed] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."). In weighing the prejudice from an allegedly improper or missing charge, a reviewing court must view the jury charge in its total context. *See Cupp*, 414 U.S. at 146-47. The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147.

The trial court in the instant case submitted three counts to the jury: murder in the second degree; manslaughter in the first degree; and criminal possession of a weapon in the third degree. (Tr. Jury Charge[25] at 87, 89, 91). Before instructing the jury on the elements and details of each count, the court, in a portion of the instructions clearly applicable to each of the three pending charges, set forth the elements of justification. (*Id.* at 82-87). The court's instruction to the jury included the following admonition:

---

[25] Refers to the jury charge section of the trial transcript. (Docket No. 17-15).

> It is thus an element of *each count* that the defendant was not justified. As a result if you find that the People have failed to prove beyond a reasonable doubt that the defendant was not justified, then you must find the defendant not guilty of *all counts*. Again…As a result if you found the People have failed to prove beyond a reasonable doubt that the defendant was not justified, then you must find the defendant not guilty as to *all counts*.

(*Id.* at 87) (emphasis added).

Petitioner's challenge to the trial court's charge is that it did not include an explicit instruction that, upon finding Petitioner not guilty of any one charge on grounds of self-defense, the jury must not consider the remaining charges. Petitioner's argument is based upon a series of New York State cases which have held that jurors must be charged "that if they found the defendant not guilty of a greater charge on the basis of justification, they [are] not to consider any lesser counts." *People v. Feuer*, 11 A.D.3d 633, 634 (2d Dep't 2004) (citing *People v. Ross*, 2 A.D.3d 465 (2d Dep't 2003); *People v. Roberts*, 280 A.D.2d 415 (1st Dep't 2001); *People v. Bracetty*, 216 A.D.2d 479, 480 (2nd Dep't 1995); *People v. Castro*, 131 A.D.2d 771, 773 (2d Dep't 1987)). The purpose of this requirement is to prevent inconsistent verdicts, such as a finding of not guilty of murder on grounds of justified use of force in self-defense, but nevertheless guilty of manslaughter. *See People v. Hoy*, 122 A.D.2d 618, 619 (4th Dep't 1986).

The trial court's instructions in this case achieved the result mandated by *Feuer*, "even if it did so with different words than those cases suggest." *Duncan*, 410 F. Supp. 2d at 114. Before explaining the elements of each of the crimes with which Petitioner was charged, the trial court clearly explained to the jurors, in an instruction explicitly made applicable to each of those crimes, that they were required to find Petitioner not guilty of all charges against him unless they were convinced beyond a reasonable doubt that Petitioner was not acting in self-defense. (Tr. Jury Charge at 834); *see Duncan*, 410 F. Supp. 2d at 114 (rejecting a habeas petitioner's attack of

a trial court's justification defense instruction where the justification defense was not included in each charge but made clearly applicable to all crimes).

Furthermore, even if the trial court's instruction did constitute error under state law, that error would not be grounds for habeas relief. The Supreme Court has noted the "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Because the trial court instructed the jury that a failure to prove that Petitioner was not acting in self-defense mandated a verdict of not guilty on all charges, any error in the particular language of the charge under New York law did not "by itself so infect[ ] the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147. Indeed, in *Morales v. Keane*, the court denied a habeas petition raising a similar claim, holding that any error in the state trial court's instruction concerning the "proper sequence of deliberation regarding the justification defense and the homicide counts" did not rise to the level of a constitutional due process violation. 92 Civ. 8189 (LBS), 1994 WL 38668, at *2, *4 (S.D.N.Y. Feb. 4, 1994). Accordingly, I respectfully recommend that Petitioner's habeas claim relating to the trial court's justification charge be denied.

## 2. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner's attempt to bootstrap an ineffective assistance of counsel allegation to his challenge to the justification charge also fails. Under federal law, in order to establish ineffective assistance of counsel, a petitioner

> "must show that counsel's performance was deficient," ... so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," ... and (2) must show "that the deficient performance prejudiced the defense," ... in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*United States v. Gomez,* 705 F.3d 68, 79 (2d Cir. 2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 690 (1984)). The first prong requires courts to be "highly deferential" to counsel's performance, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Representation is constitutionally deficient only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Petitioner's argument that his trial counsel was ineffective is based on counsel's failure to object to the court's justification charge. However, the failure to object to a jury instruction "constitutes unreasonably deficient performance only when the trial court's instruction contained clear and previously identified errors," *Aparicio v. Artuz,* 269 F.3d 78, 99 (2d Cir. 2001) (internal quotation marks omitted), and the failure to object to the not-clearly-erroneous justification charge cannot plausibly render trial counsel's performance deficient, *see also Love v. Smith,* No. Civ. 08-3746 (BMC), 2009 WL 2422384, at *7 (E.D.N.Y. Aug. 6, 2009) (rejecting ineffective assistance of counsel claim based on the failure to object to a similar jury instruction in light of the lack of a "clear state rule on whether the stop-consideration language must be included"). Furthermore, because the trial court's justification charge was practically indistinguishable from the charge Petitioner desires, there is no basis for concluding that the failure to object to the charge fell outside the wide range of reasonable legal assistance.

Petitioner also cannot show any prejudice from counsel's alleged deficiency. Like Petitioner's proposed charge, the trial court's jury charge explicitly instructed the jury that a finding of justification required it to acquit on all charges. Since this Court must presume that the jury followed the instructions it was given, *see Richardson v. Marsh,* 481 U.S. 200, 206 (1987), there is no possibility that a more explicit "stop consideration" charge would have

changed the jury's verdict. Moreover, it is apparent that the jury rejected Petitioner's justification defense in any event, as the evidence suggesting that he was the initial instigator was compelling.

Accordingly, I respectfully recommend that Petitioner's habeas claim for ineffective assistance of counsel based on the allegation that his trial attorney failed to object to the justification charge be denied.

## B. Constitutionality of § 440.10 and § 440.30

### 1. § 440.10

Petitioner argues that the procedural bars set forth in § 440.10 violate his right to due process and are contrary to clearly established Supreme Court precedent. (Petition at 4-5). Specifically, he contends that because the factual predicate for his § 440.10 claims[26] relied, at least in part, on the trial record, § 440.10 barred review of his claims and left him without a venue to prosecute them. (*Id.*).

This claim is plainly meritless. "[T]he section 440.10(2)(c) prohibition on collateral appeal of issues that could have been directly appealed does not raise any due-process concerns." *Pena v. Fischer*, No. 00 Civ. 5984 (HB)(MHD), 2003 WL 1990331, at *13 (S.D.N.Y. Apr. 30, 2003); *see also Lawrence v. Branker*, 517 F.3d 700, 716 (4th Cir. 2008) (holding that petitioner's due process claims regarding state post-conviction proceeding are not cognizable under § 2254); *Word v. Lord*, No. 04 Civ. 328 (LAP)(HBP), 2009 WL 4790222, at *5-7 (S.D.N.Y. Dec. 11, 2009) (same). Indeed, the Second Circuit has specifically held that a court's reliance on § 440.10(2)(c) constitutes an adequate and independent state ground that precludes federal habeas review. *See Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997). Furthermore, Petitioner's

---

[26] Including, *inter alia*, his attorney's failure to request a *Feuer* instruction and seek independent DNA testing of the box cutter that was entered into evidence at trial.

argument that § 440.10 is contrary to the Supreme Court precedent set forth in *Massaro v. United States* is also unavailing. 538 U.S. 500 (2003). Respondent correctly states that § 440.10's provisions align with the holding of *Massaro*, subject to the statutory restriction that some ineffective assistance of counsel claims are more properly heard on direct appeal. (Opp. at 37). The state court's conclusion that Petitioner's claims were more appropriate for direct appellate review does not render § 440.10 unconstitutional.

Accordingly, Petitioner's constitutional challenge to § 440.10 is procedurally barred and, thus, not cognizable on habeas review. I, therefore, respectfully recommend that it be denied.

## 2.  § 440.30

Petitioner also challenges the evidentiary requirements of § 440.30, arguing that it required him, an indigent defendant, to produce evidence in support of his claims before they could be reviewed, thus violating his equal protection and due process rights. (Petition at 5). Specifically, Petitioner contends that he was unconstitutionally prevented from pursuing his ineffective assistance of counsel claim because he was unable to procure an attorney affidavit, as required under § 440.30. (*Id.*). This claim is similarly futile. *See, e.g.*, *Bryant v. Lempke*, No. 08 Civ. 6103 (CJS)(VEB), 2009 WL 3188934, at *1 (W.D.N.Y. Sept. 30, 2009) ("To the extent that [Petitioner] claims, in his C.P.L. § 440.10 motion and *coram nobis* application, that C.P.L. §§ 440.10(2)(a), 440.10(2)(c), and 440.30 are unconstitutional, the Court denies leave to include these claims as amendment would be futile."). Petitioner's §440.10 motion was not denied because he did not provide an attorney affidavit, but rather, as Respondent correctly states, because the merits of his ineffective assistance of counsel claims were more properly reviewable on direct appeal as a matter of the existing record. Petitioner was able to pursue his ineffective

assistance of counsel claim despite the procedural bar set forth in § 440.30 and, therefore, cannot establish any due process or equal protection violations.

Accordingly, I respectfully recommend that this claim disputing the constitutionality of § 440.30 be denied as well.

## C. Right of Access to Post-Trial DNA Testing

Petitioner argues that his motion for a court order pursuant to CPL § 440.30(1-a) to direct the testing or retesting of a box cutter was improperly denied in state court. (Petition at 4-5). Respondent contends that this claim is not cognizable on habeas review and lacks merit. (Opp. at 40-46). I agree with Respondent.

It is a well-established rule that there is no federal constitutional right to post-conviction collateral relief, including discovery and specifically DNA testing, and therefore such claims are not cognizable on habeas review. *See, e.g.*, *Murray v. Giarratano*, 492 U.S. 1, 10 (1989) ("State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings ...."); *Wesley v. Alexander*, No. 10 Civ. 245, 2010 WL 2710609 at *7 (E.D.N.Y. July 7, 2010) (Petitioner "challenges the state court's denial of his request for DNA and fingerprint analysis. Habeas relief is a vehicle for defendants to challenge the validity of their conviction and sentence. [Petitioner's] claim, if granted, would not 'necessarily demonstrate[ ] the invalidity of the conviction,' but rather may present a ground upon which to do so. Accordingly, this is not a cognizable basis for federal habeas relief." (citations omitted)); *Charriez v. Greiner*, 265 F.R.D. 70, 88 (E.D.N.Y. 2010) ("The Supreme Court has held there is no right of postconviction access to biological evidence for DNA testing. In the absence of such a right, defendant's claim states no basis for federal habeas relief." (citing *District Attorney's Office v. Osborne*, 557 U.S. 52, 54-71 (2009)); *Green v. Walsh*, 03 Civ. 0908, 2006 WL 2389306, at *20 (S.D.N.Y. Aug. 17, 2006)

("Petitioner may be attempting to challenge the state court's refusal to order that the semen sample be re-tested. To the extent any such claim would be based on a New York statutory right, it would not be cognizable in this federal habeas proceeding… Further, to the extent Petitioner is claiming that the state court deprived him of his right to due process by denying his Section 440.30 motion without a hearing, Petitioner cannot actually demonstrate the violation of a constitutional right. There is no constitutional provision that even requires a state to grant post-conviction review, …and, therefore, most federal courts have rejected due process claims arising out of the conduct of state courts in post-conviction proceedings, holding that such claims are also not cognizable on habeas review." (citations omitted)).

New York's subdivision 1-a to § 440.30 ("§ 440.30(1-a)(a)"), enacted in 1994, permits a post-conviction defendant to "request the performance of a forensic DNA test on specified evidence" when moving to vacate a judgment. While the request "shall" be granted upon a court's "determination that if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting in the judgment, there exists a reasonable probability that the verdict will have been more favorable to the defendant," there is still a measure of judicial discretion involved in a defendant's post-conviction right to access evidence. § 440.30(1-a)(a); *see, e.g.*, *Fuentes v. Superintendent, Great Meadow Corr. Facility*, No. 04 Civ. 0737, 2009 WL 2424206, at *9 (E.D.N.Y. Aug. 5, 2009) (finding no procedural due process violation where state court denied post-conviction defendant's request for access to evidence for DNA testing under § 440.30(1-a)(a) upon the state court's determination that the defendant had failed to show the requisite reasonable probability). Here, the state court properly exercised its discretion in denying Petitioner's motion, as it found that Petitioner failed to demonstrate that there existed a reasonable probability that the verdict would have been more favorable if a new DNA test were

to be administered.  Petitioner made no showing that the DNA testing was in any way compromised.  Petitioner also failed to propound any facts or evidence showing that the DNA results were, in any way, connected to or affected by analyses performed by Mr. Veeder, the forensic examiner who Petitioner contends did not follow proper protocol. (*See also supra* n.16).

Accordingly, I respectfully recommend that Petitioner's habeas claim on the basis of his perceived right to post-trial DNA testing be denied.

## D. Constitutionality of the Assigned Counsel Program

Petitioner argues that the statutory pay rate his assigned counsel received inevitably resulted in low-quality representation, stating that the:

> Assigned Counsel's Program that represented the petitioner was unconstitutionally structured and cultured by a pay structure adversely affected the quality of the performance of assigned counsel in petitioner's case, and has been determined to be incapable of providing the constitutional required protections it was designed to ensure

(Petition at 5).  This claim is specious.

As an initial matter, in its May 11, 2009 Decision and Order on Petitioner's § 440.10 motion, the trial court properly concluded that Petitioner's challenges to the Assigned Counsel Program could have been made on the record, thus making the issue reviewable on direct appeal pursuant to § 440.10(3)(a).  C.P.L. § 440.10(3)(a) provides that

> the court may deny a motion to vacate a judgment when ... [a]lthough facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal ...

Accordingly, where "the facts relie[d] upon in support of [defendant's 440.10] motion were known prior to his ... sentence," a § 440.10 motion may be denied. *People v. Berezansky,*

229 A.D.2d 768, 771 (3d Dep't), *appeal denied*, 89 N.Y.2d 919 (1996); *see also People v. Donovon*, 107 A.D.2d 433, 443 (2d Dep't 1996) (the purpose of a § 440.10 motion "is to inform the court of facts not reflected in the record and unknown at the time of judgment" and a § 440.10 motion "cannot be used as a vehicle for an additional appeal.") (citations omitted), *appeal denied*, 65 N.Y.2d 694 (1985).

The Second Circuit has specifically held that a court's reliance on § 440.10(2)(c) constitutes an adequate and independent state ground that precludes federal habeas review. *See, e.g., Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir.1995), *cert. denied*, 520 U.S. 1106 (1997). C.P.L. § 440.10(3)(a) likewise constitutes an adequate and independent state ground that prevents a federal court from reviewing the merits of the claim. *See, e.g., Cameron v. People of State of N.Y.*, No. 01 Civ. 9988 (BSJ)(GWG), 2002 WL 31898076, at *7 (S.D.N.Y. Dec. 30, 2002) (citing § 440.10(3)(a) as one of New York's "procedural default" rules barring federal habeas review of the claim). Accordingly, the procedural default relied upon by the state court in denying Petitioner's § 440.10 motion pursuant to § 440.10(2)(c) and § 440.10(3)(a) bars any federal habeas review of Petitioner's claim by this Court, "unless [he] can show cause for the default and prejudice attributable thereto, ... or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris*, 489 U.S. at 262 (citations and internal quotations omitted).

Petitioner has not shown "cause" or "prejudice" by alleging facts tending to demonstrate that counsel was disadvantaged because additional funds were not available. The only basis for Petitioner's claim is his personal dissatisfaction with the outcome of his trial, not any objective evidence that trial counsel performed in a sub-par manner because he was paid less than his

typical hourly rate when representing indigent defendants under the Assigned Counsel Program. Because Petitioner does not provide specifics as to what counsel should have done differently, it would be pure speculation to conclude that there is a reasonable probability of a more favorable outcome. In other words, Petitioner cannot demonstrate that he was prejudiced. To the contrary, Petitioner's trial counsel zealously represented his interests and performed competently at all pre-trial and trial proceedings. Further, there is no clearly established federal law requiring a certain pay scale for attorneys. *See Taylor v. Poole*, No. 07 Civ. 6318 (RJH)(GWG), 2009 WL 2634724, at *21 (S.D.N.Y. Aug. 27, 2009), *report and recommendation adopted*, No. 07 Civ. 6318 (RJH)(GWG), 2011 WL 3809887 (S.D.N.Y. Aug. 26, 2011). Rather, there is entitlement to effective assistance of counsel, as articulated in *Strickland*. Thus, the claim regarding pay accorded to assigned counsel does not provide a basis for reversal of Petitioner's conviction.

Accordingly, I respectfully recommend that this constitutional challenge to the Assigned Counsel Program be denied as procedurally barred and lacking in factual basis.

## E. Petitioner's Challenge to his Sentence

As his final ground for habeas relief, Petitioner claims that the trial court's sentence was "excessive and should be reduced." (Petition at 3). Petitioner does not dispute that his sentence was with within the range prescribed by New York state statute, nor does he dispute that the trial court had discretion to sentence him to concurrent terms.

It is well settled that when a sentence is in accord with the range established by state statutory law there is no constitutional issue presented for habeas review. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Alfini v. Lord*, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.") (collecting

cases); *McCalvin v. Senkowski*, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by state law.") (citation omitted); *Thomas v. Senkowski*, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) (denying excessive sentence claim where the petitioner's sentence fell within the range prescribed by state law); *Mitchell v. Herbert*, No. 97 Civ. 5128, 1998 WL 186766, at \*7 (S.D.N.Y. April 20, 1998). Rather, a petitioner must show the trial court's sentencing decision amounted to an improper, "arbitrary or capricious abuse of discretion" that deprived the petitioner of his liberty. *Jones v. Hollins*, 884 F.Supp. 758, 761-62 (W.D.N.Y.), *aff'd*, 89 F.3d 826 (2d Cir. 1995). Accordingly, the imposition of consecutive sentences is found to run afoul of the Eighth Amendment "only under extraordinary circumstances." *Salcedo v. Artuz*, 107 F.Supp.2d 405, 414 (S.D.N.Y. 2000).

In light of this standard, the trial court's imposition of consecutive sentences was clearly an appropriate exercise of discretion and does not provide a ground for habeas review. *See United States v. Jaramillo-Montoya*, 834 F.2d 276, 279 (2d Cir. 1987). Petitioner's criminal record, the evidence presented, the heinous nature of the crime involved, and Petitioner's lack of accountability, (Docket No. 17-16 at 11-16), all support the trial court's decision. Thus, there are no extraordinary circumstances that warrant Petitioner's claim that his sentence is excessive and amounts to cruel and unusual punishment. Accordingly, I respectfully recommend that this excessive sentence claim also be denied.

## IV. CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that this Petition be denied in its entirety.

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections.  If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kenneth M. Karas and at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:  December 19, 2016
        White Plains, New York

RESPECTFULLY SUBMITTED,

JUDITH C. McCARTHY
United States Magistrate Judge